

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SUNSHIP INC.,                                       :

                            Plaintiff,              :        ECF CASE

          - against -                               :

                                                    :

SAMAD MISR (EGYFERT),                               :
EL NASR STEEL PIPES AND FITTINGS CO.,               :
EGYPTIAN GENERAL PETROLEUM                          :
CORPORATION (EGPC),                                 :
INTER PLAST, and                                    :
MAN CREW BUILDING SYSTEMS,                          :

                                                    :

                            Defendants.             :
-------------------------------------------------------------X

## VERIFIED COMPLAINT

The Plaintiff, SUNSHIP INC., (hereinafter "Plaintiff" or "SUNSHIP"), by its attorneys,

LENNON, MURPHY & LENNON, LLC, as and for its Verified Complaint against the

Defendants, SAMAD MISR (EGYFERT) (hereinafter "EGYFERT"), EL NASR STEEL PIPES

AND FITTINGS CO. (hereinafter ""ENSP"), EGYPTIAN GENERAL PETROLEUM

CORPORATION (hereinafter "EGPC"), INTER PLAST and MAN CREW BUILDING

SYSTEMS (hereinafter "MAN CREW"), alleges, upon information and belief, as follows:

## SUBJECT MATTER JURISDICTION

1.      This is an admiralty and maritime claim within the meaning of Federal Rule of

Civil Procedure 9(h) and 28 United States Code § 1333.  Jurisdiction over this matter is also

present pursuant to this Court's federal question jurisdiction, 28 United States Code § 1331.

## THE PARTIES

2.       At all times material to this action, SUNSHIP was, and still is, an entity duly incorporated under the laws of Panama with a place of business at 34-30 Calle 34, Panama, Republic of Panama.

3.       At all material times SUNSHIP was the owner of the M/V TORTUGA (hereinafter the "Vessel") that was chartered to non-party EZZELDIN ALI OSHMAN under a contract of affreightment dated April 10, 2006. *See copy of Contract of Affreightment attached hereto as Exhibit 1.*

4.       The Contract of Affreightment provided for a lump sum freight of $225,000.00 for each voyage performed thereunder and also demurrage at the rate of $7,500.00 per day pro rata.

5.       At all material times, Defendant EGYFERT was, and still is, an entity duly organized and existing by virtue of foreign law with a place of business in Giza, Egypt.

6.       At all material times, Defendant ENSP was, and still is, an entity duly organized and existing by virtue of foreign law with a place of business in Cairo, Egypt.

7.       At all material times, Defendant EGPC was, and still is, an entity duly organized and existing by virtue of foreign law with a place of business in Cairo, Egypt.

8.       At all material times, Defendant INTERP PLAST was, and still is, an entity duly organized and existing by virtue of foreign law with a place of business in Egypt.

9.       At all material times, MAN CREW was, and still is, an entity duly organized and existing by virtue of foreign law with a place of business in Alexandria, Egypt.

## THE CONTRACTS

### *CONTRACT 1*

10.    Defendant EGYFERT was at all material times the shipper of cargo aboard the Vessel as per Bill of Lading No. 1/PORT SUDAN dated May 9, 2006. *See copy of Bill of Lading attached hereto as Exhibit 2.*

11.    Bill of Lading No. 1 incorporated all terms and conditions of the Contract of Affreightment dated April 10, 2006 including the express and/or implied obligation to pay any and all freight and demurrage incurred under the contract of carriage (i.e., the bill of lading as incorporating the Contract of Affreightment).

12.    Plaintiff properly loaded, stowed, carried and delivered EGYFERT's cargo described in Bill of Lading No. 1 and otherwise carried out its obligations under the contract of carriage.

13.    Certain disputes arose between the parties and non-party EZZELDIN ALI OSHMAN's failure to pay freight and demurrage due and owing to SUNSHIP under the contract of affreightment.

14.    Despite due and repeated demands the outstanding freight and demurrage due and owing to SUNSHIP remains unpaid.

15.    Under the express and/or implied terms of the contract of carriage the Plaintiff may legally recover the unpaid freight and demurrage from Defendant EGYFERT. *See Dornett and Others v. Beckford 110 ER 883 and Carver On Carriage of Goods by Sea.*

16.    Pursuant to the Contract of Affreightment, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

17.     SUNSHIP will commence arbitration proceedings against Defendant EGYFERT once jurisdiction has been obtained over EGYFERT within this action.

18.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law.  As best as can now be estimated, SUNSHIP expects to recover the following amounts from Defendant EGYFERT at London arbitration:

|   |   |   |
|---|---|---|
| A. | Principle claim[1]: | $221,860.00; |
| B. | Interest at 6% for one year: | $13,311.60; |
| C. | Attorneys' Fees: | $25,000.00; and |
| D. | Arbitration Costs: | $10,000.00 |
| **Total:** | | **$268,171.60.** |

### CONTRACT 2

19.     Defendant ENSP was at all material times the shipper of cargo aboard the Vessel as per Bill of Lading No. 002/P. SUDAN dated May 21, 2006.  *See copy of Bill of Lading attached hereto as Exhibit 4.*

20.     Bill of Lading No. 002/P. SUDAN incorporated all terms and conditions of the Contract of Affreightment dated April 10, 2006 including the express and/or implied obligation to pay any and all freight and demurrage incurred under the contract of carriage (i.e., the bill of lading as incorporating the Contract of Affreightment).

---

[1] A total of $225,000 in lump sum freight plus $528,698 of demurrage was incurred on this voyage.  Non-party EZZELDIN ALI OSHMAN paid , or had paid on its behalf, a total of $70,000 thereby reducing the total unpaid freight and demurrage to $683,698.00.  Defendant EGYFERT's *pro rata* liability is 32.45% under Bill of Lading No. 1/PORT SUDAN towards this unpaid sum measured by calculating its proportion of the total cargo shipped aboard the Vessel as per the Cargo Manifest attached hereto as Exhibit 3.

21.     Plaintiff properly loaded, stowed, carried and delivered ENSP's cargo described in Bill of Lading No. 002/P. SUDAN and otherwise carried out its obligations under the contract of carriage.

22.     Certain disputes arose between the parties and non-party EZZELDIN ALI OSHMAN's failure to pay freight and demurrage due and owing to SUNSHIP under the contract of affreightment.

23.     Despite due and repeated demands the outstanding freight and demurrage due and owing to SUNSHIP remains unpaid.

24.     Under the express and/or implied terms of the contract of carriage the Plaintiff may legally recover the unpaid freight and demurrage from Defendant ENSP. *See Dornett and Others v. Beckford 110 ER 883 and Carver On Carriage of Goods by Sea.*

25.     Pursuant to the Contract of Affreightment, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

26.     SUNSHIP will commence arbitration proceedings against Defendant ENSP once jurisdiction has been obtained over ENSP within this action.

27.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law.  As best as can now be estimated, SUNSHIP expects to recover the following amounts from Defendant ENSP at London arbitration:

| | | |
|---|---|---|
| A. | Principle claim[2]: | $24,338.00; |
| C. | Interest at 6% for one year: | $1,463.28; |
| C. | Attorneys' Fees: | $2,500.00; and |

---

[2] *See footnote 1*. Defendant ESNP's *pro rata* liability is 3.56% towards this unpaid sum under Bill of Lading No. 002/P. SUDAN.

|   | E. | Arbitration Costs: | $1,500.00 |
|---|---|---|---|
|   | **Total:** |   | **$29,801.28.** |

### CONTRACT 3

28.     Defendant ENSP was at all material times the shipper of cargo aboard the Vessel as per Bill of Lading No. 003/P. SUDAN dated May 21, 2006. *See copy of Bill of Lading attached hereto as Exhibit 5.*

29.     Bill of Lading No. 003/P. SUDAN incorporated all terms and conditions of the Contract of Affreightment dated April 10, 2006 including the express and/or implied obligation to pay any and all freight and demurrage incurred under the contract of carriage (i.e., the bill of lading as incorporating the Contract of Affreightment).

30.     Plaintiff properly loaded, stowed, carried and delivered ENSP's cargo described in Bill of Lading No. 003/P. SUDAN and otherwise carried out its obligations under the contract of carriage.

31.     Certain disputes arose between the parties and non-party EZZELDIN ALI OSHMAN's failure to pay freight and demurrage due and owing to SUNSHIP under the contract of affreightment.

32.     Despite due and repeated demands the outstanding freight and demurrage due and owing to SUNSHIP remains unpaid.

33.     Under the express and/or implied terms of the contract of carriage the Plaintiff may legally recover the unpaid freight and demurrage from Defendant ENSP. *See Dornett and Others v. Beckford 110 ER 883 and Carver On Carriage of Goods by Sea.*

34.     Pursuant to the Contract of Affreightment, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

35.     SUNSHIP will commence arbitration proceedings against Defendant ENSP once jurisdiction has been obtained over ENSP within this action.

36.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law.  As best as can now be estimated, SUNSHIP expects to recover the following amounts from Defendant ENSP at London arbitration:

| | | |
|---|---|---|
| A. | Principle claim[3]: | $6,153.00; |
| D. | Interest at 6% for one year: | $369.18; |
| C. | Attorneys' Fees: | $2,500.00; and |
| F. | Arbitration Costs: | $1,500.00 |
| **Total:** | | **$10,522.18.** |

### CONTRACT 4

37.     Defendant EGPC was at all material times the shipper of cargo aboard the Vessel as per Bill of Lading No. 004/P. SUDAN dated May 28, 2006.  *See copy of Bill of Lading attached hereto as Exhibit 6.*

38.     Bill of Lading No. 004/P. SUDAN incorporated all terms and conditions of the Contract of Affreightment dated April 10, 2006 including the express and/or implied obligation to pay any and all freight and demurrage incurred under the contract of carriage (i.e., the bill of lading as incorporating the Contract of Affreightment).

39.     Plaintiff properly loaded, stowed, carried and delivered EGPC's cargo described in Bill of Lading No. 004/P. SUDAN and otherwise carried out its obligations under the contract of carriage.

---

[3] *See footnote 1.*  Defendant ESNP's *pro rata* liability is 0.9% towards this unpaid sum under Bill of Lading No. 003/P. SUDAN.

40.    Certain disputes arose between the parties and non-party EZZELDIN ALI OSHMAN's failure to pay freight and demurrage due and owing to SUNSHIP under the contract of affreightment.

41.    Despite due and repeated demands the outstanding freight and demurrage due and owing to SUNSHIP remains unpaid.

42.    Under the express and/or implied terms of the contract of carriage the Plaintiff may legally recover the unpaid freight and demurrage from Defendant EGPC. *See Dornett and Others v. Beckford 110 ER 883 and Carver On Carriage of Goods by Sea.*

43.    Pursuant to the Contract of Affreightment, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

44.    SUNSHIP will commence arbitration proceedings against Defendant EGPC once jurisdiction has been obtained over EGPC within this action.

45.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law.  As best as can now be estimated, SUNSHIP expects to recover the following amounts from Defendant EGPC at London arbitration:

| | | |
|---|---|---|
| A. | Principle claim[4]: | $396,681.00; |
| E. | Interest at 6% for one year: | $23,800.86 |
| C. | Attorneys' Fees: | $40,000.00; and |
| G. | Arbitration Costs: | $10,000.00 |
| **Total:** | | **$470,418.86.** |

---

[4] *See footnote 1.*  Defendant EGPC's *pro rata* liability is 58.02% towards this unpaid sum under Bill of Lading No. 004/PORT SUDAN.

## *CONTRACT 5*

46.   Defendant INTER PLAST was at all material times the shipper of cargo aboard the Vessel as per Bill of Lading No. 005/PORT SUDAN dated May 30, 2006. *See copy of Bill of Lading attached hereto as Exhibit 7.*

47.   Bill of Lading No. 005/PORT SUDAN incorporated all terms and conditions of the Contract of Affreightment dated April 10, 2006 including the express and/or implied obligation to pay any and all freight and demurrage incurred under the contract of carriage (i.e., the bill of lading as incorporating the Contract of Affreightment).

48.   Plaintiff properly loaded, stowed, carried and delivered INTER PLAST's cargo described in Bill of Lading No. 005/PORT SUDAN and otherwise carried out its obligations under the contract of carriage.

49.   Certain disputes arose between the parties and non-party EZZELDIN ALI OSHMAN's failure to pay freight and demurrage due and owing to SUNSHIP under the contract of affreightment.

50.   Despite due and repeated demands the outstanding freight and demurrage due and owing to SUNSHIP remains unpaid.

51.   Under the express and/or implied terms of the contract of carriage the Plaintiff may legally recover the unpaid freight and demurrage from Defendant INTER PLAST. *See Dornett and Others v. Beckford 110 ER 883 and Carver On Carriage of Goods by Sea.*

52.   Pursuant to the Contract of Affreightment, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

53.   SUNSHIP will commence arbitration proceedings against Defendant INTER PLAST once jurisdiction has been obtained over INTER PLAST within this action.

54.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law.  As best as can now be estimated, SUNSHIP expects to recover the following amounts from Defendant INTER PLAST at London arbitration:

| | | |
|---|---|---|
| A. | Principle claim[5]: | $11,075.00; |
| F. | Interest at 6% for one year: | $664.50; |
| C. | Attorneys' Fees: | $2,500.00; and |
| H. | Arbitration Costs: | $1,500.00 |
| **Total:** | | **$15,739.50.** |

## CONTRACT 6

55.     Defendant MAN CREW was at all material times the shipper of cargo aboard the Vessel as per Bill of Lading No. 006/P. SUDAN dated May 28, 2006.  *See copy of Bill of Lading attached hereto as Exhibit 8.*

56.     Bill of Lading No. 006/P. SUDAN incorporated all terms and conditions of the Contract of Affreightment dated April 10, 2006 including the express and/or implied obligation to pay any and all freight and demurrage incurred under the contract of carriage (i.e., the bill of lading as incorporating the Contract of Affreightment).

57.     Plaintiff properly loaded, stowed, carried and delivered MAN CREW's cargo described in Bill of Lading No. 006/P. SUDAN and otherwise carried out its obligations under the contract of carriage.

---

[5] *See footnote 1.*  Defendant INTER PLAST's *pro rata* liability of 1.62% towards this unpaid sum under Bill of Lading No. 005/P. SUDAN.

58.    Certain disputes arose between the parties and non-party EZZELDIN ALI OSHMAN's failure to pay freight and demurrage due and owing to SUNSHIP under the contract of affreightment.

59.    Despite due and repeated demands the outstanding freight and demurrage due and owing to SUNSHIP remains unpaid.

60.    Under the express and/or implied terms of the contract of carriage the Plaintiff may legally recover the unpaid freight and demurrage from Defendant MAN CREW.  *See Dornett and Others v. Beckford 110 ER 883 and Carver On Carriage of Goods by Sea.*

61.    Pursuant to the Contract of Affreightment, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

62.    SUNSHIP will commence arbitration proceedings against Defendant MAN CREW once jurisdiction has been obtained over MAN CREW within this action.

63.    Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law.  As best as can now be estimated, SUNSHIP expects to recover the following amounts from Defendant MAN CREW at London arbitration:

| | | |
|---|---|---|
| A. | Principle claim[6]: | $21,263.00; |
| G. | Interest at 6% for one year: | $1,275.78; |
| C. | Attorneys' Fees: | $2,500.00; and |
| I. | Arbitration Costs: | $1,500.00 |
| **Total:** | | **$26,538.78.** |

---

[6] *See footnote 1.*  Defendant MAN CREW has a *pro rata* liability of 3.11% towards this unpaid sum under Bill of Lading No. 006/P. SUDAN.

## CONTRACT 7

64.     Defendant MAN CREW was at all material times the shipper of cargo aboard the Vessel as per Bill of Lading No. 007/P. SUDAN dated May 28, 2006.  *See copy of Bill of Lading attached hereto as Exhibit 9.*

65.     Bill of Lading No. 007/P. SUDAN incorporated all terms and conditions of the Contract of Affreightment dated April 10, 2006 including the express and/or implied obligation to pay any and all freight and demurrage incurred under the contract of carriage (i.e., the bill of lading as incorporating the Contract of Affreightment).

66.     Plaintiff properly loaded, stowed, carried and delivered MAN CREW's cargo described in Bill of Lading No. 007/P. SUDAN and otherwise carried out its obligations under the contract of carriage.

67.     Certain disputes arose between the parties and non-party EZZELDIN ALI OSHMAN's failure to pay freight and demurrage due and owing to SUNSHIP under the contract of affreightment.

68.     Despite due and repeated demands the outstanding freight and demurrage due and owing to SUNSHIP remains unpaid.

69.     Under the express and/or implied terms of the contract of carriage the Plaintiff may legally recover the unpaid freight and demurrage from Defendant MAN CREW.  *See Dornett and Others v. Beckford 110 ER 883 and Carver On Carriage of Goods by Sea.*

70.     Pursuant to the Contract of Affreightment, all disputes arising thereunder are to be submitted to arbitration in London with English law to apply.

71.     SUNSHIP will commence arbitration proceedings against Defendant MAN CREW once jurisdiction has been obtained over MAN CREW within this action.

72.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English law.  As best as can now be estimated, SUNSHIP expects to recover the following amounts from Defendant MAN CREW at London arbitration:

| | | |
|---|---|---|
| A. | Principle claim[7]: | $2,392.00; |
| B. | Interest at 6% for one year: | $143.52; |
| C. | Attorneys' Fees: | $2,500.00; and |
| D. | Arbitration Costs: | $1,500.00 |
| **Total:** | | **$6,535.52.** |

## REQUEST FOR RELIEF UNDER SUPPLEMENTAL RULE B

73.     The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendants have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendants. *See Affidavit in Support of Prayer for Maritime Attachment attached hereto as Exhibit 10.*

74.     The Plaintiff seeks an Order from this Court directing the Clerk of Court to issue independent Process of Maritime Attachment and Garnishment for each contractual claim set forth herein pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendants held by any garnishee(s) within the District for

---

[7] *See footnote 1.*  Defendant MAN CREW has a *pro rata* liability of 0.35% towards this unpaid sum under Bill of Lading No. 007/P. SUDAN.

the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claim as described above.

75.     The Plaintiff also seeks an Order from this Court recognizing, confirming and enforcing any forthcoming arbitration award(s) in Plaintiff's favor pursuant to the New York Convention for the Recognition and Enforcement of Foreign Arbitral Awards as codified at 9 U.S.C. §§ 201 *et seq*.

**WHEREFORE**, Plaintiff prays:

A.      That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B.      That pursuant to 9 U.S.C. §§ 201. *et seq.*, and/or the doctrine of comity, this Court recognize and confirm any foreign judgment(s) or arbitration award(s) rendered on the claims had herein as a Judgment of this Court;

C.      That since the Defendants cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue individual Process of Maritime Attachment and Garnishment for each contractual claim set forth herein pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all tangible or intangible property of the Defendants within the District, including but not limited to any funds held by any garnishee, which are due and owing to the Defendants, up to the individual amounts as set forth on Exhibit 11 attached hereto, to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

D.    That this Court enter Judgments against Defendants on the claims set forth herein;

E.    That this Court retain jurisdiction over this matter through the entry of any Judgment(s) or award(s) associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

F.    That this Court award Plaintiff its attorney's fees and costs of this action; and

G.    That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: April 30, 2009

The Plaintiff,
SUNSHIP LTD.

By: _____
Kevin J. Lennon
Anne C. LeVasseur
Nancy R. Siegel

LENNON, MURPHY & LENNON, LLC
420 Lexington Avenue, Suite 300
New York, NY 10170
(212) 490-6050
(212) 490-6070
kjl@lenmur.com
acl@lenmur.com
nrs@lenmur.com

## ATTORNEY VERIFICATION

State of New York   )
                 )    ss:    City of New York
County of New York )

     1.     My name is Nancy R. Siegel.

     2.     I am over 18 years of age, of sound mind, capable of making this Verification and fully competent to testify to all matters stated herein.

     3.     I am the attorney for the Plaintiff, in this action.  I am fully authorized to make this Verification on its behalf.

     4.     I have read the foregoing Verified Complaint and the contents thereof are true and accurate to the best of my knowledge, information and belief.

     5.     The reason that this Verification was made by me and not the Plaintiff is that the Plaintiff is a corporation none of whose officers are present in this District.

     6.     The source of my knowledge is information and records furnished to me by the Plaintiff and its counsel, all of which I believe to be true and accurate.

Dated: April 30, 2009
New York, NY

                                    _____
                                    Nancy R. Siegel

# EXHIBIT 1

*от Шердакова*
*12.04. 2006*

# GENERAL AGREEMENT
DATE 10 APRIL 2006

Name  M/V TORTUGA
ex Names  MV CAPTAIN YAMAK
LOA   128,77 m
Year of Built  1975
Built  UJINA SHIPBUILDING CO. LTD Hiroshima Japan
Breadth  19,8 m
IMO No.  7371367      Depth  10,5 m
Call Sign  D6CJ2      Max Draught  8,252 m
Class Notation  H/M-100-A-E-ICE, General cargo
Flag  Union of Comoros      LIGHTSHIP  3200 T

TONNAGE
DWT 12048 T
GROSS      NET      Grain Capacity: 14134,2m3
Inter: 6941 T   Inter: 3601 T   Bale Capacity: 13841,6m3
Panama: 7798,36 T   Panama: 6380,69 T

HATCH OPENINGS      WEATHER DECK
No.1   20 X 9,75 m
No.2   34 X 9,75 m
No.3   18 X 9,75 m

HOLD CAPACITIES m3   BALE   GRAIN
No. 1         3744,3   3852,9
No. 2         6224,1   6331,4
No. 3         3873,2   3949,9

CARGO GEAR
1 swinging boom SWL 10 tons and capable of serving hold 1
2 swinging booms capable of serving hold 2 fore and aft booms SWL 10 tons each
1 swinging boom SWL 10 tons and capable of serving hold 3 .
BUT VESSEL TO BE CONSIDERED GEARLESS

- OWNER SUNSHIP INC, PANAMA
- MANAGER SEABULK SHIPMANAGEMENT, PANAMA

- PRESENT POSITION: PORT SUDAN
- SUB/STEM/SHIPPERS/RCVRS APPROVAL TO BE LIFTED WI/N 24 HRS AFTER FIXING

FOR

-A/C EZZELDIN ALI OSMAN
   TRADING &SHIPPING,
   PORT SUDAN
   FAX:0024931 1825047
   TEL:0024931 1822993
      :0024931 1822535
   PERSON TO CONTACT :Capt.AMIN FAKI
      MOB:00249912450175
-UPTO VSL'S FCC  COA FOR 6+6 MONTHS OO AND VOYAGES IN DIRECT CONTINUATION
CARGO CEMENT IN JUMBO BAGS+BUTAMINE IN DRUMS+GENS ON/UNDER DECK IN CHARTS OPTION,DECK
CGO ON CHARTS RISK ,TIME AND EXPENSES
-PORT OF LOADING-SUEZ/PORT OF DISCH-PORT SUDAN
-LAYCAN 014/20 APR 2006
-L/DRATES 15 DAYS TTL FHINC BENDS
-FREIGHT USD 225.000,00.= L'SUM FIOS FOR EACH VOY L/S/D PAYABLE 100% W/I 2 B/DS OF S/R B(S)L MARKED
"FREIGHT PAYABLE AS PER C/P" DIRECTLY TO OWNRS' NOMINATED ACCT IAC BBB
- VESSEL TO BE SUITABLE FR DRAFT SURVEY BENDS
- MASTER HAS THE RIGHT TO REJECT ANY DAMAGED/UNSOUND CARGO AND THE SHIPPERS HAS TO
REPLACE SAME WITH THE SOUND ONE OWISE BS/L TO BE REMARKED AS PER MASTER REMARKS
-"COB" BS/L ONLY AGAINST CLEAN CARGO
-L/S/D IF NECESSARY TO BE ON CHARTS TIME AND EXPENCE,DUNNAGE/LASHING MATERIAL CHARTS ACCT
-OWNERS FREE D/A'S AT BENDS
- D/AS PAID BY CHARTS BENDS
- SHORE CRANES TO BE USED AT LOAD/DISCH PORTS FOR CHRRS ACC
-DEM USD 7500 PDPR/FD BE PABLE W/I 5DAYS OF PRESENTATION OF SUPPORTING DOCS EVEN BY FAX
-LAYTIME NON REVERSABLE
- NOR BY CABLE/RADIO/TLX/VHF WWWW 8AM/2PM BE

-T/D ON CGO/FRT/VSL CHRTRS' ACCT
-EXINS/OAP, IF ANY, CHRTRS' ACCT
-OWNERS/MASTER TO TENDER TO CHARTS VIA BROKERS 5/4/3/2/1 DS NOTICE OF ARRIVAL AT LOAD AND DISPORTS
-CHABE-AGENT AT LOADPORT - ALREDY SHIPPING/AGENT AT DISPORT-ADARAWEIB SHIPPING
- VSL SHOULD BE P+I COVERED FOR PRESENT VOYAGE
-GA/ARB LDN ACC TO ENGL LAW
-3.75% TTL COMM TO BE PAID BY OWS
-O/WISE CLEAN GCN '76 C/P LOGICALLY AMENDED AS PER MAIN TERMS
-END

15-APR-2006 16:11  FROM:BAT SHIPPING          009634100000        TO:00380692450476        P.1

FROM :                              FAX NO. :

May. 11 1999 04:07PM  P1


VESSEL DESCRIPTION
DATE 15 APRIL 2006

Name MV TUR-I-ADA
ex Name MV CAPTAIN YAMAK
LOA 123.77 m
Built CHINA SHIPBUILDING CO. LTD Hiroshima Japan
Breadth 19.5 m
IMO No. 7321260      Depth 10.5 m
Call Sign 3XGU      Max Draught 8,252 m
Gear Version HMC 100-4XHICK, Oriental cargo
Flag Union of Comoros      LIGHTSHIP 3201 T

TONNAGE
DWT 13018 T
GROSS      NET      Grain Capacity 14,126,7m3
Other 5749 T      Laker 3801 T      Bale Capacity 13849,6m3
Panamax 7708,54 T      Suezmax 6350.69 T

HATCH OPENINGS ... WEATHER DECK
No.1      20 X 9.75 m
No.2      24 X 9.75 m
No.3      16 X 9.75 m

HOLD CAPACITIES m ... BALE   GRAIN
No. 1      3746,3      3851,0
No. 2      6226,1      6531,4
No. 3      3875,2      3944,9

CARGO GEAR
1 swinging Main SWL 30 tons and capable of serving No. 2
2 swinging cranes capable of serving hold 1, fore and aft boom SWL 10 tons each
1 swinging crane SWL 10 tons and capable of serving hold 3
BUT VESSEL TO BE CONSIDERED GEARLESS

- OWNER SUNSHIP INC. PANAMA
- MANAGER SEABULK SHIPMANAGEMENT, PANAMA

- PRESENT POSITION: PORT SUDAN
- SUBSTEM/SHIPPERS/OWNER APPROVAL TO BE LIFTED WITHIN 24 HRS AFTER FIXING

FOR

M/s IZZELDIN ALI OSMAN
     TRADING &SHIPPING
     PORT SUDAN
     TAX:00249311825887
     TEL:00249311825899
       00249311825255
     PERSON TO CONTACT :Capt.AMIN FAKI
       MOB:002491012458173
- UPTO VSL S AGE COA FOR 6/4 MONTHS GO AND VOYAGES IN DIRECT CONTINUATION
- CARGO CEMENT IN JUMBO BAGS/BITUMINE IN DRUMS/GENS ON/UNDER DECK IN
- CHARTDO FOA DISCHARGED ON CHARTS RISK /MHO AND EXPENSES
- PORT OF LOADING GREKO/PORT OF DISCH. PORT SUDAN
- LAYCAN 07/14/28 APR 2006
- L/D RATES 15 DAYS TTL FHINC BENDS

- FREIGHT USD $350000.- LSUM FIOS FOR EACH VOY L&D PAYABLE 100% WI 2 B/DSL
  VR BOTH MARKED "FREIGHT PAYABLE AS PER C/P" DIRECTLY TO OWNERS' NOMINATED
  ACCT I/AC BEL
- VESSEL TO BE SUITABLE FR DRAFT SURVEY BENDS
- MASTER HAS THE RIGHT TO REJECT ANY DAMAGED/UNSOUND CARGO AND THE
  SHIPPERS HAS TO REPLACE SAME WITH THE SOUND ONE O/WISE BSL TO BE REMARKE
  AS PER MASTER REMARKS
- "COB" BSL ONLY AGAINST CLEAN CARGO
- USD IF NECESSARY TO BE ON CHARTS TIME AND EXPENCE DUNNAGE/LASHING
  MATERIAL CHARTS ACCT
- OWNERS FREE D/A'S AT BENDS
- C/AS PAID BY CHARTS BENDS
- SHORE CRANES TO BE USED AT LOAD/DISCH PORTS FOR CHRES ACC
- BAL USD 2340 FOR L&D BE PABLE WI 5DAYS OF PRESENTATION OF SUPPORTING DOCS
  EVEN BY FAX
- L A TERMS NON REVERSABLE
- NOR BY CABLE/RADIO/TLX/VHF WWW 8AM/2PM BE
- P/D ON LOO/FREUVGL CHRTES' ACCT
- EXPENSOE, IFANY, CHRTS' ACCT
- OWNERS/MASTER TO TENDER TO CHARTS VIA BROKERS 5/3/2/1 DS NOTICE OF
  ARRIVAL AT LOAD AND DISPORTS
- CHARS AGENT AT LOADPORT - ALREOV SHIPPING/AGENT AT DISPORT-ADARA/WEBB
  SHIPPING
- VSL SHOULD BE P&I COVERED FOR PRESENT VOYAGE
- G/A/ARB LDN ACC TO ENGL LAW
- 3/75% TTL COMM TO BE PAID BI OWS
- O/WISE CLEAN GCY "N C/P LOGICALLY AMENDED AS PER MAIN TERMS
  BND




# EXHIBIT 2

CODE NAME "CONGENBILL" EDITION 1994

**Shipper**

SAMAD MISR (EGYPFRT) S.A.E
9 ADDY STREET, MESSAHA SQUARE
DOKKI, GIZA - EGYPT
FAX : +20(2)7491362

# BILL OF LADING
TO BE USED WITH CHARER-PARTIES
REFERANCE NO
B/L No. 1/ PORT SUDAN
1ST
ORIGINAL

**Consignee :**

TOORDER OF BLUE NILE MASHREG BANK.

**COPY**

**Notify address :**

ARAB SUDANESE BLUE NIL & AGRICULTURAL CO.
PO BOX 2102
KHARTOUM – SUDAN
FAX : 183266538

| **Vessel** | **Port of loading** |
|---|---|
| M/V "TORTUGA" | ADABIYYA  PORT, EGYPT |

**Port of discharge :**
PORT SUDAN , SUDAN

| description of goods : | **WEIGHT** |
|---|---|
| **AMMONIUM NITRATE FERTILIZER IN 50KG** | **1,500.00 MT** |

L/C NO. IMP / 085 / 06 PBB

"CLEAN ON BOARD"
FRIGHT PAYABLS AS PER CHARTER PARTY

( OF WHICH ON BOARD THE VESSEL IS NOT RESPONSIBLE FOR ALL CARGO DESCRIPTION, QUALITY , QUANTITY , WEIGHT ,
AND ANY DAMAGED OR LOSS)

**FREIGHT PAYABLE AT SUEZ
AS P.C**

**SHIPPED**   At the port of loading in apparent good order and
Condition on board the vessel for carriage to the port
of  Discharge or so  near thereto  as  she may safely  get  the goods Specified
above.
Weight, measure, quality. Quantity, conditions, contents and value unknown
**IN WITNESS**  whereof  the Master or Agent of the said vessel  has signed
the number of Bills of Lading  indicated  below  all of this tenor and  date, any
one of which being accomplished the others shall be void
**FOR CONDITIONS OF CARRIAGE SEE OVERLEAF**

| Number of original BS /L :      (3/ THREE. ) | **Place and date of issue :** 09./0 5/2006 |
|---|---|

**MASTER OF M/V TORTUGA**

REMARKS : 3 DAYS DISCHARGEING  AND THEN DEMURRAGE USD
1200 PER DAY TO BE PAID BY CONSIGNEE DAY BY DAY AS PER C/P

WE ARREST CARGO IF DEMURRAGE WILL NOT BE COLLECTED
CARGO WILL NOT BE REALISED FROM VESSEL.



# BILL OF LADING
TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE (BIMCO)

Page 1

## Conditions Of Carriage.

(1) All terms and conditions, liberties and exceptions of  the Charter Party, dated   as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) **General Paramount Clause.**
   (a) The Hague Rules contained in the  International Convention for the Unification of certain rules relating to Bills of Lading , dated Brussels
        the 25th August 1924 as enacted in  the country of shipment  shall apply to this Bill of Lading. When no such enactment is in force in the
   country of shipment, the corresponding  legislation  of the  country of  destination shall apply, but in  respect  of shipments to which  such enactments are compulsorily applicable, the terms of the said Convention shall apply.

   (b) Trades where Hague-Visby Rules apply.
        In trades where the  International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague- Visby Rules - apply compulsorily, the provision of the  respective  legislation shall apply to his Bill of Lading.

   (c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the
        Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) **General Average.**
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994 , or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average  shall  be  paid to the Carrier even when such average  is the  result of a fault, neglect or error of  the Master, Pilot or Crew. The Charterers, and Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) **New Jason Clause.**
In the event of accident , danger , damage or disaster before  or after the commencement of the voyage , resulting from any cause whatsoever, whether due  to  negligence or  not , for which , or for the   consequence of which, the Carrier is  not  responsible , by statute , contract  or otherwise, the cargo, shippers , consignees or the owners  of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices , losses  or  expenses  of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo.  If  a  salving vessel  is owned or operated by the Carrier,  salvage  shall  be  paid for as fully as  if the said salving vessel or vessels belonged to strangers.  Such deposit as the Carrier or his agents  may  deem sufficient  to  cover the estimated contribution of the goods and any  salvage  and special  charges   thereon shall, if required , be made by the cargo, shippers, consignees or owners of the goods to the carrier before delivery.

(5) **Both-to-Blame Collision Clause.**
If  the  Vessel  comes  into  collision with another vessel as  a  result of the negligence of the other vessel and any  act, neglect or default of the  Master, Mariner, Pilot or  the  servants of the Carrier in the  navigation or in the  management of the Vessel , the owners of the cargo carried hereunder  will  indemnify  the Carrier against all  loss  or liability to the other or non-carrying vessel  or her owners in so far as such loss or liability represents loss of, or damage to  ,or any  claim  whatsoever of  the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and  set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or Carrier.
The foregoing provisions shall also apply where the  owners, operators or those in  charge  of any vessel or vessels or objects other than , or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight,
destination, etc., see overleaf.

# EXHIBIT 3

# CARGO MANAFEST

**MV TORTUGA**  **FROM SUEZ,  TO  PORT SUDAN**  **DATE 5/06/2006**

| REF. No. | SHIPPER | NOTIFY | CONSIGNEE | CARGO | GROSS WEIGHT | Net WEIGHT | REMARKS |
|---|---|---|---|---|---|---|---|
| 1 | SAMAD MISR (EGYPRT) S.A.E INDUSTREE LAFESSAIIA SQUARE DOKKI GIZA-EGYPT FAX: 22002) 7491362 | ARAB SUDANESE BLUR. & AGRICULTURAL CH. PO BOX 2102 FAX: 18326/538 | TO ORDER OF NILE MASHREG BANK | AMMONIUM NITRATE FERTILIZER IN 50KG | 1,500.00 MT | 1,500.00 TONS | |
| 2 | ELNASR STEEL PIPES AND FITTINGS CO. P.O.BOX: GHELWAN – CAIRO-EGYPT, TEL:(02) 5553658 FAX:(02) 5553658 | SUDABO FOR TRADING AND INVESMENT CO. KHARTOUM – SUDAN HASAN STREET TEL: 2491834631 | TO THE ORDER EXPORT DEVELOPMENT BANK UN80 BRANCH SUDAN | BLACK STEEL PIPES SIZE:89/5477:100056'S AS PER PROFORMA | 164.500 TONS | 164.500 TONS | |
| 3 | ELNASR STEEL PIPES AND FITTINGS CO. P.O.BOX: GHELWAN – CAIRO-EGYPT, TEL:(02)5553658 FAX (02)5553683 | SUDABO FOR TRADING AND INVESTMENT CO. KHARTOUM – SUDAN BUKIN STREET TEL.:2491834631 | TO THE ORDER EXPORT DEVELOPMENT BANK UN80 BRANCH SUDAN | BLACK STEEL PIPES SIZE:26955073 2250PCS AS PER PROFORKIA, NCLI07205/2006 DDF11.1206 DIC NO.1N 45QU 7240/6C AND 6 FOR 1SHUAN | 40.872 TONS | 40.872 TONS | |
| 4 | EGYPTIAN GENERAL PETROLEUM CORPOCIATION (EGPC) NEW MAADI, PALASTINE ST.,PO BRX 1732,CAIRO,EGYPT | SAIIGO TRADING COMPANY GOLD STYLE TRADING COMPANY LTD 100F CROWN HOSE NORTH CIRCLI. AR ROAD -LONDON -NW 10 2PN | OMDURMAN NATIONAL BANK SUG MAHI BRANCH | BITUMEN GRADE 60/70 PACKED IN USED STEEL DRUMS INGOOR CONDITION | 2678.720 MT | 2498.008 MT | |
| 5 | INTER PLAST KZB MASR ALEX ELSABRAWI ROAD THE INDUSTRIAL ZONE EGYPT TEL :5390966 FAX:5390962 | PAN SUDAN TRADING CO. LTD TEL:00124918373111 /12/91631 KHARTOUM SUDAN | OMDURMAN NATIO NAL BANK, SAGGANA BR. TEL:00124918346295L FAX:00124918346784 KHARTOLIA) SUDAN | PVC PIPES ASPER PH NO,32006 DATE 09/04/2006 L/C NO. 6IM SAG 18/4/2006 CLEAON BOARD | 74.719 TONS | 74.719 TONS | |
| 6 | MAN CREW BUILDING SYSTEMS 9 EBRAHIM EL SHARIF- ALX ANDRIA  TEL 002035458900 FAX 002035458970 | HIGLEN PETEOLEUI SERVICES AND INVESTMENT CO. 2. OBUX NO,13234 HAFIL EL SAFA.,ABEDIMITATIN STREET-KHARTOI AL-SUDAN AFF. MUKALID EMIAG TEL.0024918326053 | OMDURMAN NATIONAL BANK KHARTOU1 SUDAN L/C NO. 1KM1053720 | 4079 PCS OF SUPPLY OF PRE-- ENGINEERED AND PRE-FABRICATED BUILDINGS | 18.617 12.809 12.187 15.0 112.306 TONS | 165639 9427283 521/830 1753423 3876237 4117723 2362166 | 19.088 19.606 20.000 15.0560 | |
| | | | | 5X40' OF    CONTAINERS 1X40'20X    CONTAINER 5X20' BOX  4 CONTAINERS 1X40' BOX 4024005 1X20' BOX 5009140 1729PCS OPEN (OPEN DESK.8) | 8.000 TONS 8.000 TONS 16.000 TONS | | |

# EXHIBIT 4

CODE NAME " CONGENBILL " EDITION 1994

B/L No.     002/P.SUDAN

**Shipper:**

EL NASR STEEL PIPES AND FITTINGS CO.
P.O.BOX : 6 HELWAN – CAIRO.EGYPT .
TEL : (02)5563687    FAX : (02)5553683

**BILL OF LADING**
TO BE USED WITH CHARTER PARTY
Reference no. COA 10/04/2008
ORIGINAL

**Consignee :**

TO THE ORDER OF EXPORT DEVELOPMENT
BANK UN/SQ BRANCH – SUDAN .

**Notify address**

SUDABO FOR TRADING AND INVESTMENT CO.
KHARTOUM – SUDAN BUKUAN STREET .
TEL : +249183463130       FAX : +249183467953
MOBILE : OO249912300753

COPY NON NEGOTIABLE

**Vessel**

TORTUGA

**Port of loading**

ADABIYA PORT – EGYPT

**Port of discharge**

PORTSUDAN (SUDAN)

| Marks and nos. | packages & description of goods | weight & measurements |
|---|---|---|
| BUNDELS . 144 | BLACK STEEL PIPES SIZE : 6 5/5 QTY . :1000 PCS<br>AS PER PROFORMA INV . NO . 9/2005-2006<br>DD :8/12/2006 .<br>D/C NO. UN /SQ/LC/2/2006<br>( CFR ) PORTSUDAN<br>SHIPPED ON BOARD ON M/V TORTUGA<br>ON 21/05/2008 .<br>CLEAN ON BOARD B/L<br>**F.I.O.S** | GROSS WEIGHT<br>164.500 TONS<br><br>NET WEIGHT<br>164 500 TONS |

( of which        under deck at shipper's risk ; the carrier not being responsible for loss or damage howsoever arising )

FREIGHT PAYABLE AS PER  C I P

SHIPPED    at the Port of Loading in apparent good order and Condition

On board the vessel for carriage to the port of Discharge

Or so near thereto as she may safely get the goods Specified above.

Weight, measure, quality, Quantity, conditions, contents and value unknown.

IN WITNESS whereof the Master or Agent of the said vessel has

Signed the number of Bills Of Lading indicated below all of this tenor

and date, any one of which being accomplished the others shall be void

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at<br>Suez | Place and date of Issue<br>ADABIYA PORT.—EGYPT 21/05/2008 |
|---|---|
| NO OF ORIGINAL B/L<br>3/3 | Signature<br>Master M/V TORTUGA |

# BILL OF LADING
TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE (BIMCO)

## Conditions Of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are hereby incorporated.

(2) General Paramount Clause.

(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

(b) Trades where Hague-Visby Rules apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague- Visby Rules - apply compulsorily, the provision of the respective legislation shall apply to his Bill of Lading.

(c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, and Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight, destination, etc., see overleaf.

# EXHIBIT 5

CODE NAME " CONGENBILL " EDITION 1994

| | |
|---|---|
| **Shipper :** <br><br> EL NASR STEEL PIPES AND FITTINGS CO. <br> P.O.BOX : 6 HELWAN – CAIRO.EGYPT. <br> TEL : (02)5553687   FAX : (02)5553683 | **B/L No.**    003/P.SUDAN <br><br> **BILL OF LADING** <br> TO BE USED WITH CHARTER PARTY <br> Reference no.COA 10/04/2006 <br> ORIGINAL |

**Consignee :**

TO THE ORDER OF EXPORT DEVELOPMENT
BANK UN/SQ BRANCH – SUDAN .

**Notify address**

SUDABO FOR TRADING AND INVESTMENT CO.
KHARTOUM – SUDAN BUKUAN STREET .
TEL: +249183463130       FAX:+249183467963
MOBILE : OO249912300753

**COPY NON NEGOTIABLE**

**Vessel**

TORTUGA

| **Port of loading** | **Port of discharge** |
|---|---|
| ADABIYA  PORT – EGYPT | PORTSUDAN (SUDAN) |

| Marks and nos. | packages & description of goods | weight & measurements |
|---|---|---|
| BUNDELS : 25 | BLACK STEEL PIPES SIZE :6 5/6 QTY . : 250 PCS <br> AS PER PROFORMA INV . NO . 10/2005-2006 <br> DD : 21.1.2006 . <br> D/C NO. UN /SQ/LC/24/06 <br> ( C AND F ) PORTSUDAN <br> SHIPPED ON BOARD ON M/V TORTUGA <br> ON 21/05/2006 . <br> CLEAN ON BOARD B/L <br> **F.I.O.S** | **GROSS WEIGHT** <br> 40.872 TONS <br><br> **NET WEIGHT** <br> 40.872 TONS |

( of which      under deck at shipper's risk : the carrier not being responsible for loss or damage howsoever arising )

FREIGHT PAYABLE AS PER  C / P

**SHIPPED**    at the Port of Loading in apparent good order and Condition
On board the vessel for carriage to the port of Discharge
Or so near thereto as she may safely get the goods Specified above.
Weight, measure, quality, Quantity, conditions, contents and value unknown.
IN WITNESS whereof the Master or Agent of the said vessel has
Signed the number of Bills Of Lading indicated below all of this tenor
and date, any one of which being accomplished the others shall be void

**FOR CONDITIONS OF CARRIAGE SEE OVERLEAF**

| Freight payable at <br> Suez | Place and date of issue <br> ADABIYA  PORT – EGYPT 21/05/2006 |
|---|---|
| NO OF ORIGINAL B/L <br> 3/3 | Signature <br> AS Master M/V TORTUGA |

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE (BIMCO)

## Conditions Of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.

(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

(b) Trades where Hague-Visby Rules apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague- Visby Rules - apply compulsorily, the provision of the respective legislation shall apply to his Bill of Lading.

(c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, and Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight,
destination, etc., see overleaf.

# EXHIBIT 6

CODE NAME "CONGENBILL" EDITION 1994

B/L No.   004/P.SUDAN

**Shipper:**

EGYPTIAN GENERAL PETROLEUM CORPORATION ( EGPC )
NEW MAADI , PALASTINE ST. , PO BOX 11742, CAIRO , EGYPT.

**BILL OF LADING**
TO BE USED WITH CHARTER PARTY
Reference no. COA  10/04/2006

**Consignee :**

OMDURMAN NATIONAL BANK
SUG MAHALI BRANCH

COPY NON NEGOTIABLE

**Notify address**

SABARCO TRADING COMPANY
GOLD STYLE TRADING COMPANY LTD
100 F CROW HOUSE NORTH CIRCULAR ROAD   LONDON – N W 10 7P N

**Vessel**

TORTUGA

| Port of loading | Port of discharge |
|---|---|
| ADABIYA  PORT – EGYPT | PORTSUDAN (SUDAN) |

| Marks and nos. | packages & description of goods | weight & measurements |
|---|---|---|
| **NUMBER OF DRUMS**<br>12539 DRUMS | BITUMEN GRADE 60/70<br>PACKING IN USED STEEL DRUMS | **GROSS WEIGHT**<br>2678.34 MT<br><br>**NET WEIGHT**<br>2498.619 MT |

**CLEAN ON BOARD**
**F.I.O.S**
( of which          under deck at shipper's risk ; the carrier not being responsible for loss or damage howsoever arising )

FREIGHT PAYABLE AS PER C/P

**SHIPPED**     at the Port of Loading in apparent good order and Condition

On board the vessel for carriage to the port of Discharge

Or so near thereto as she may safely get the goods Specified above,

Weight, measure, quality, Quantity, conditions, contents and value unknown.

IN WITNESS whereof the Master or Agent of the said vessel has

Signed the number of Bills Of Lading indicated below all of this tenor

and date, any one of which being accomplished the others shall be void

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at<br>SUEZ | Place and date of issue<br>ADABIYA  PORT – EGYPT  28/05/2006 |
|---|---|
| NO OF ORIGINAL B/L<br>3/3 | Signature<br>AS  Master M/V TORTUGA |

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE (BIMCO)

Page 1

# Conditions Of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated  as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.
(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels
the 25th August 1924 as enacted in the country of shipment shall apply to this Bill of Lading. When no such enactment is in force in the
country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which
such enactments are compulsorily applicable, the terms of the said Convention shall apply.

(b) Trades where Hague-Visby Rules apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the
Hague-Visby Rules - apply compulsorily, the provision of the respective legislation shall apply to his Bill of Lading.

(c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the
Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London
unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error
of the Master, Pilot or Crew. The Charterers, and Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever,
whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or
otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any
sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in
respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving
vessel or vessels belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution
of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods
to the carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of
the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo
carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such
loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-
carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her
owners as part of their claim against the carrying Vessel or Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in
addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight,
destination, etc., see overleaf.

# EXHIBIT 7

CODE NAME : "CONGENBILL " EDITTION 1994

**BILL OF LADING**
TO BE USED WITH CHARTERPARTIES – PARTIES
Reference No: CON 10/04/2006

**Shippers**

INTER PLAST
K 28 MASR ALEX ELSAHREWI ROAD THE
INDUSTRIAL ZONE   EGYPT
TEL : 5390966          FAX : 5390967

B / L NO. 005 / PORT SUDAN

**CONSIGNEE**

TO THE ORDER OF
OMDURMAN NATIONAL BANK, SAGGANA BR.
TEL : 00249 183462951     FAX : 00249 183467784
KHARTOUM , SUDAN

**NOTIFY ADDRESS**
PAN SUDAN TRADING CO. LTD
TEL : 002499183773411 / 12391621
KHARTOUM  SUDAN

COPY NON NEGOTIABLE

| VESSEL | PORT OF LOADING |
|---|---|
| M/V TORTUGA | SUEZ SEA PORT |

| PORT OF DISCHARGE | PLACE OF DELIVERY ON-CARRIER |
|---|---|
| PORT SUDAN ( SEA PORT ) | |

| MARKS AND NOS | NUMBER AND KIND OF PACKAESGES DESCRIPTION OF GOODS | GROSS WEIGHT |
|---|---|---|
| 113 PACKAGES | **PVC PIPES** | 74.719 |
| | AS PER P / I NO. 3/2006  DATE 09/04/2006 | TON |

\* L/C NO. 6IM SAG 181/2006
\* CLEAN ON BOARD
\* F . I . O . S

(of which on board the vessel is not responsible for all cargo description , quality , weight , and any damaged or loss)

**FREIGHT PREPAID
FIOS**

SHIPPED     at the port of loading in apparent good order and Condition on board the vessel for carriage to the port of discharge or so near Thereto as she may safely get the goods specilide above. Weight , Measure , Quality , quantity . Condition , Contents and Value unknown .

IN WITNESS where of the master or agents of the said vessel has signed the Number of bills of lading indicated below all of this tenor and date , any one of which being accomplished the others shall be void .

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at | place and date of issue |
|---|---|
| SUEZ | SUEZ ON 30 / 5 / 2006 |
| number of original bs/l | signature |
| 3/THREE | MASTER OF M/V TORTUGA |

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE (BIMCO)

## Conditions Of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.
   (a). The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels
      the 25th August 1924 as enacted in the country of shipment shall apply to this Bill of Lading. When no such enactment is in force in the
      country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no
      such enactments are compulsorily applicable, the terms of the said Convention shall apply.

   (b) Trades where Hague-Visby Rules apply.
      In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the
      Hague- Visby Rules - apply compulsorily, the provision of the respective legislation shall apply to his Bill of Lading.

   (c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from
      the
      Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London
unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error
of the Master, Pilot or Crew. The Charterers, and Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever,
whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or
otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any
sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in
respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving
vessel or vessels belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution
of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods
to the carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of
the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo
carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such
loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-
carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her
owners as part of their claim against the carrying Vessel or Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in
addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight,
destination, etc., see overleaf.

# EXHIBIT 8

CODE NAME "CONGENBILL" EDITION 1994

**Shipper:**

AN CREW BUILDING SYSTEMS
EBRAHIM EL SHARIF - ALEXANDRIA
TEL ·00203-5453040
AX ·00203-5454070

**BILL OF LADING**
TO BE USED WITH CHARTER PARTY
Reference No. CON  18/04/2006

B/L NO.   wen -

**Consignee :**

OMDURMAN NATIONAL BANK
KHARTOUM / SUDAN   L/C NO.2KIM053720

COPY NON NEGOTIABLE

**Notify address**

HIGLEIG PETROLEUM SERVICES AND INVESTMENT CO.
P.OBOX NO. 13224
HAEL EL SAFA, ABED KHATIM STREET, KHARTOUM - SUDAN
ATTN : MR. KALID EL HAG
TEL · 0024918035953

**Vessel**

TORTUGA

**Port of loading**

ADABIYA PORT - EGYPT

**Port of discharge**

PORTSUDAN (SUDAN)

| Marks and nos. | packages & description of goods | weight & measurements |
|---|---|---|
| 1X40' TO    4881639 | S.T.C. | 18,617 |
| 1X40' TO    9427283 | | 18,088 |
| 1X40' TO    5291830 | 4070 PCS OF | 17,808 |
| 1X40' TO    4752423 | SUPPLY OF Pre-engineered and | 19,606 |
| 1X40' TO    4875337 | Pre-fabricated buildings includes: | 17,187 |
| 1X20" BOX  4113725 | -steel structure elation | 20,000 |
| 1X20" BOX  0820453 | -shower cabin | 16,000 |
| 1X20" BOX  2362156 | -shower bay | 15,000 |
| 5X40" OT CONTAINERS | -sanitary fittings | |
| 1X40' BOX CONTAINER | -A/C and while washing house | 142,306  TONS |
| 2X20' BOX CONTAINERS | | |
| SHIPPER'S  OWN COTAINER | **CLEAN ON BOARD** | |
| (S.O.C.) | **F.I.O.S** | |

( of which  under deck at shipper's risk ; the carrier not being responsible for loss or damage howsoever arising )

**FREIGHT PAYABLE AS PER .c/p**

**SHIPPED**   at the Port of Loading in apparent good order and Condition

On board the vessel for carriage to the port of Discharge

Or so near thereto as she may safely get the goods Specified above

Weight, measure, quality, Quantity, conditions, contents and value unknown.

IN WITNESS whereof the Master or Agent of the said vessel has

Signed the number of Bills Of Lading indicated below all of this tenor

and date, any one of which being accomplished the others shall be void

**FOR CONDITIONS OF CARRIAGE SEE OVERLEAF**

| Freight payable at | Place and date of issue |
|---|---|
| **SUEZ** | ADABIYA PORT - EGYPT      28/05/2006 |
| **NO OF ORIGINAL B/L** | **Signature** |
| 3/3 | AS Master M/V TORTUGA |

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE (BIMCO)

Page 1

## Conditions Of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.

(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

(b) Trades where Hague-Visby Rules apply.
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague- Visby Rules - apply compulsorily, the provision of the respective legislation shall apply to his Bill of Lading.

(c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.
General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.
Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, and Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.
In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the Carrier before delivery.

(5) Both-to-Blame Collision Clause.
If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or Carrier.
The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight,
destination, etc., see overleaf.

# EXHIBIT 9

C/P NAME "CONGENBILL" EDITION 1994

B/L No.    0079  SUDAN

**Shipper:**

MAY CHEM HOLDING SYSTEMS
9 EBRAHIM F. SHARIF - ALEXANDRIA
TEL. 00203-5458004G
FAX - 07203-5458070

**BILL OF LADING**
TO BE USED WITH CHARTER PARTY
Reference No. COA 19/04/2006

**Consignee :**

HOLPEC PETROLEUM SERVICES AND INVESTMENT CO
P O BOX NO. 13224
HAI EL SAFA ABEID KHATIM STREET - KHARTOUM - SUDAN
ATTN: MR KAUD EL HAG - TEL . 00249183256953

**Notify address**

SAME AS CONSIGNEE

COPY NON NEGOTIABLE

**Vessel**

TORTUGA

**Port of loading**

ADABIYA PORT - EGYPT

**Port of discharge**

PORTSUDAN (SUDAN)

| Marks and nos. | packages & description of goods | weight & measurements |
|---|---|---|
| 1X40' BOX  4024005-+<br>1X20' BOX  5009148<br><br>SHIPPER'S  OWN COTAINER<br>(S.O.C.) | S.T.C.<br>729 PCS OF<br>WOODEN DESKS | 8.000 TONS<br>8.000 TONS<br>16.000 TONS |

CLEAN ON BOARD
F.I.O.S'
( of which        under deck at shipper's risk ; the carrier not being responsible for loss or damage howsoever arising )
FREIGHT PAYABLE AS PER .  c/p

SHIPPED    at the Port of Loading in apparent good order and Condition

On board the vessel for carriage to the port of Discharge

Or so near therato as she may safely get the goods Specified above

Weight, measure, quality, Quantity, conditions, contents and value unknown.

IN WITNESS whereof the Master or Agent of the said vessel has

Signed the number of Bills Of Lading indicated below all of this tenor

and date, any one of which being accomplished the others shall be void

FOR CONDITIONS OF CARRIAGE SEE OVERLEAF

| Freight payable at<br>SUEZ | Place and date of issue<br>ADABIYA PORT - EGYPT   28/05/2006 |
|---|---|
| NO OF ORIGINAL B/L<br>3/3 | Signature<br><br>AS  Master M/V TORTUGA |

**BILL OF LADING**
TO BE USED WITH CHARTER-PARTIES
CODE NAME: "CONGENBILL"
EDITION 1994
ADOPTED BY
THE BALTIC AND INTERNATIONAL MARITIME CONFERENCE (BIMCO)

# Conditions Of Carriage.

(1) All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated.

(2) General Paramount Clause.

(a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.

(b) Trades where Hague-Visby Rules apply.

In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - the Hague-Visby Rules - apply compulsorily, the provision of the respective legislation shall apply to his Bill of Lading.

(c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

(3) General Average.

General Average shall be adjusted, stated and settled according to York-Antwerp Rules 1994, or any subsequent modification thereof, in London unless another place is agreed in the Charter Party.

Cargo's contribution to General Average shall be paid to the Carrier even when such average is the result of a fault, neglect or error of the Master, Pilot or Crew. The Charterers, and Shippers and Consignees expressly renounce the Belgian Commercial Code, Part II, Art. 148.

(4) New Jason Clause.

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carrier is not responsible, by statute, contract or otherwise, the cargo, shippers, consignees or the owners of the cargo shall contribute with the Carrier in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving vessel or vessels belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the goods to the carrier before delivery.

(5) Both-to-Blame Collision Clause.

If the Vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or non-carrying vessel or her owners to the owners of said cargo and set-off, recouped or recovered by the other or non-carrying vessel or her owners as part of their claim against the carrying Vessel or Carrier.

The foregoing provisions shall also apply where the owners, operators or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

For particulars of cargo, freight,
destination, etc., see overleaf.

# EXHIBIT 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

SUNSHIP INC.,

                    Plaintiff,       :      ECF CASE

     - against -

SAMAD MISR (EGYFERT),
EL NASR STEEL PIPES AND FITTINGS CO.,
EGYPTIAN GENERAL PETROLEUM
CORPORATION (EGPC),
INTER PLAST, and
MAN CREW BUILDING SYSTEMS,

                   Defendants.

-----------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  )
                 )    ss: Town of Southport
County of Fairfield   )

      Kevin J. Lennon, being duly sworn, deposes and says:

      1.     I am a member of the Bar of this Court and represent the Plaintiff herein.  I am familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

## DEFENDANTS ARE NOT PRESENT IN THE DISTRICT

      2.     I have attempted to locate the Defendants, SAMAD MISR (EGYFERT), EL NASR STEEL PIPES AND FITTINGS CO., EGYPTIAN GENERAL PETROLEUM CORPORATION (EGPC), INTER PLAST and MAN CREW BUILDING SYSTEMS within

this District. As part of my investigation to locate the Defendants within this District, I checked the telephone company information directory, as well as the white and yellow pages for New York listed on the Internet or World Wide Web, and did not find any listing for the Defendants. Finally, I checked the New York State Department of Corporations' online database which showed no listings or registration for the Defendants except as provided below.

3.     I submit based on the foregoing that the Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.     Upon information and belief, the Defendants have, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendants.

5.     This is Plaintiff's second request for this relief made to any Court. Plaintiff previously sought relief was against non-party EZZELDIEN ALI OSMAN TRADING AND SHIPPING *et al* within an action filed in this Court entitled *Sunship Inc. v. Ezzeldien Ali Osman Trading and Shipping et al assigned civil case number 06 Civ. 4788 (PKC)*. This prior action was voluntarily dismissed without prejudice by the Plaintiff on May 11, 2007.

## PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

6.     Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy Peterson (Siegel), Colleen McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order

2

and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendants.

7. Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendants.

8. To the extent that this application for an Order appointing a special process server with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

**PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES**

9. Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendants, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

**PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS**

10. Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be

deemed effective and continuous service of process throughout any given day on which process

is served through the next day, provided that process is served the next day, and to authorize

service of process via facsimile or e-mail following initial *in personam* service.

Dated:        April 30, 2009
               Southport, CT

                                 Kevin J. Lennon

Sworn and subscribed to before me
this 30th day of April, 2009

NOTARY PUBLIC

Mary E. Fedorchak
Notary Public-Connecticut
My Commission Expires
November 30, 2011

# EXHIBIT 11

List of Independent
Process of Maritime Attachment
<u>and Garnishments to be Issued</u>

*Defendant*:  SAMAD MISR (EGYFERT)                        *Amount*:   $268,171.60

*Defendant*:  EL NASR STEEL PIPES AND FITTINGS CO.        *Amount*:   $29,810.28

*Defendant*:  EL NASR STEEL PIPES AND FITTINGS CO.        *Amount*:   $10,522.18

*Defendant*:  EGYPTIAN GENERAL PETROLEUM CORP.            *Amount*:   $470,418.86

*Defendant*:  INTER PLAST                                 *Amount*:   $15,739.50

*Defendant*:  MAN CREW BUILDING SYSTEMS                   *Amount*:   $26,538.78

*Defendant*:  MAN CREW BUILDING SYSTEMS                   *Amount*:   $6,535.52